IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANITA JONES, )
)
      Plaintiff, )
)
v. ) Civil No. 10-793-CJP
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Anita Jones is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income (SSI).[1]

## Procedural History

Ms. Jones filed an application for benefits in September, 2006, alleging disability beginning on August 30, 2006. (Tr. 125). Her application was denied initially and on reconsideration. After holding a hearing, ALJ Edward Pitts denied the application for benefits in a decision dated December 10, 2008. (Tr. 11-19). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff argues that the ALJ erred in the following respects:

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 13.

1

1. He failed to ask whether the testimony of the vocational expert (VE) conflicted with the *Dictionary of Occupational Titles*.

2. He erred in his consideration of the opinions of her treating doctor, Dr. Andrisse.

3. He failed to properly consider the effects of her obesity.

## **Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3)

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Smith is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, **Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing **Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richard v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Pitts followed the five-step analytical framework described above. He determined

that Ms. Jones had not been engaged in substantial gainful activity since the alleged onset date, and that she has severe impairments of low back pain syndrome, left ankle pain, asthma and obesity. He further determined that these impairments do not meet or equal a listed impairment. The ALJ found that Ms. Jones has the residual functional capacity to perform a limited range of work at the sedentary exertional level. The VE testified that she could perform jobs which exist in significant numbers in the national and local economy. The ALJ accepted this testimony, and found that she is not disabled. (Tr. 11-19).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. Because plaintiff does not raise any issue with regard to her alleged mental impairment, the Court will not discuss that evidence.

**1.      Agency Forms**

Ms. Jones was born in 1964, and was 42 years old when she allegedly became disabled. (Tr. 141). She had filed a previous application for disability benefits, which was denied in 2001. (Tr. 142). She said that she stopped working in August, 2006, due to back and left ankle pain. (Tr. 146).

A Work History Report indicates that Ms. Jones has worked as a packer and as a warehouse worker and cleaner through a temporary services agency. Her employment was sporadic. (Tr. 156-163).

**2.      Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on October 20. 2008. (Tr. 20). She testified that she had a GED and some training in welding. (Tr. 25). She was 5'6"

tall and weighed 340 pounds. (Tr. 51).

Ms. Jones last worked in 2007 in a warehouse. She stopped working because she could hardly walk or stand due to pain in her back and left ankle. (Tr. 34-35). She had back and ankle pain for about two years at the time of the hearing. (Tr. 35-36). The pain is in her low back. She was taking ibuprofen. (Tr. 37). She also has asthma, for which she uses an inhaler and takes medication. (Tr. 38). She has headaches, for which she takes Tramadol. (Tr. 39). The medication helps, but makes her dizzy. (Tr. 40-41). She also has "gout attacks" in her left ankle. She does not take medication for gout. (Tr. 58).

She lives with her sister, her sister's husband and a grandson. (Tr. 44). She usually just stays around the house and watches TV or sometimes walks outside. Plaintiff testified that she does no housework or laundry. Her sister does everything, including shopping. (Tr. 45-46). She has never had a drivers license. She has taken the train to Cicero, Illinois, to visit her son. (Tr. 47).

Ms. Jones has been using crutches to walk since 2007 due to pain in her ankle. (Tr. 49). She was unable to stand, walk or sit for long due to pain. She elevates her legs when sitting because they swell. (Tr. 53-54). Bending at the waist, stooping, climbing stairs and similar activities cause her pain. (Tr. 54-56).

Jeffrey Magrowski, PhD, testified as a vocational expert. The ALJ asked him to assume a person capable of sedentary work limited to only occasional climbing of stairs, bending at the waist, stooping, crouching, kneeling and crawling, and no climbing ladders or balancing, with additional limitations of no exposure to extreme temperatures or environmental irritants. In addition, the person would need a sit/stand option and was limited to no more than four hours a day of standing or walking. The VE testified that this person could not do plaintiff's past

5

relevant work. She could, however, do the jobs of small item packager or wrapper, food and beverage order clerk and small item assembler, all of which exist in significant numbers. (Tr. 61-62).

The ALJ asked a second hypothetical, adding the assumption that the person needed to keep her legs elevated throughout the workday when sitting. The VE testified that this person would not be able to maintain ongoing employment. (Tr. 62-63).

### 3. Medical Records

The earliest medical records are reports of consultative examinations. An x-ray of the left ankle on November 28, 2006, showed mild degenerative disease of the ankle joint. (Tr. 219). Dr. Dean Velis examined plaintiff on the same day. Ms. Jones told him she had back pain for five years and had chronic left ankle pain. She had not had any treatment or injections and was not taking medication. He noted that she was morbidly obese, "which contributes to this problem." (Tr. 221). She was 66 inches tall and weighed 333 pounds. She was unable to lay down on her back, and was examined sitting up. Her lungs were clear with no abnormal findings. The range of motion of her back was within normal limits with pain on the left. She had no paravertebral tenderness or point tenderness. Straight leg raising was incomplete. Her left ankle was tender with limited range of motion. She had a full range of motion of all other joints and was able to bear her own weight with a normal gait. Neurologic examination was normal and her motor strength was full and equal in arms and legs. Finger grasp and hand grip were normal. Dr. Velis concluded that she had low back pain with pain on range of motion and left ankle pain with limited range of motion. Her morbid obesity contributed to both these problems and required evaluation and management. She also had anger issues. (Tr. 221-224).

On December 27, 2006, a state agency consultant concluded that she had the residual

functional capacity (RFC) to do medium work. (Tr. 239-246).

Dr. Mahesh Shah did another consultative physical examination on May 16, 2007. He concluded that Ms. Jones had severe low back pain with marked limitation of range of motion and mild pain in the left ankle. She also had obesity "which can make above problems worse." (Tr. 264-267). Lumbar x-rays taken on the same date showed mild anterior degenerative spondylosis with no compression fractures or malalignment. The disc spaces were adequately maintained. (Tr. 269).

A state agency consultant evaluated plaintiff's RFC a second time on June 12, 2007. This time, she was assessed as being able to lift 10 pounds occasionally and 20 pounds frequently, stand/walk for 6 out of 8 hours, sit for 6 out of 8 hours, with no push pull limitations. These are the exertional requirements of light work. 20 C.F.R. §404.1567(b). She was limited to occasional postural activities such as kneeling, and she could never climb ladders or scaffolds. She had no manipulative, visual, communicative or environmental limitations. (Tr. 273 -280).

Ms. Jones was seen in the emergency room at Gateway Regional Medical Center in Granite City, Illinois, on June 15, 2007. There is no doctor's note in the record, but she was evidently given handouts on chronic pain, gout, Indocin (used to treat arthritis) and Darvocet. (Tr. 280-287).

Ms. Jones was seen in the emergency room at Kenneth Hall Regional Hospital in East St. Louis, Illinois, on June 26, 2007. Again, there is no doctor's note, but she was given handouts on Ibuprofen, high blood pressure and pain management. The diagnosis was left foot pain and hypertension. She was instructed to take ibuprofen, keep her foot elevated, and follow-up with a doctor in his office. (Tr. 289-292).

The record contains treatment notes from Southern Illinois Healthcare Foundation, many

of which are illegible. The notes reflect six visits from September, 2007, through September, 2008, and indicate that Ms. Jones complained of left ankle pain, back pain and shortness of breath. On December 4, 2007, she was prescribed high blood pressure medication, an asthma inhaler and Ultram for pain. She was to see a dietician. (Tr. 351). On the last visit, she weighed 331.5 pounds. (Tr. 348-353).

Plaintiff saw Dr. William Andrisse on January 31, 2008, for follow-up of hypertension, hypertensive cardiovascular disease, asthma, morbid obesity and severe low back pain. She weighed 237 pounds. (This must be a misprint, since she weighed 339 pounds on December 4, 2007. Tr. 351.) Her blood pressure was 160/80. The doctor noted she had no way to pay for medical care, tests or medicine, and said he would fill out paperwork for her so she could "receive some assistance." She had bilateral wheezing, and said she had back and left ankle pain. She was also noted to have migraine headaches. (Tr. 293).

On January 31, 2008, Dr. Andrisse completed a form entitled Physician's Assessment for Social Security Disability Claim. (Tr. 375). Dr. Andrisse listed diagnoses of severe low back pain and obesity. He said that she would need to "elevate her leg(s) periodically or throughout the day." He opined that she could sit for less than an hour total and could stand/walk for less than an hour total in an eight hour day. The last question on the form asks the doctor whether the patient's condition would reasonably prevent her from doing sedentary work on a sustained basis. The question also asks the doctor to briefly explain his answer. Dr. Andrisse did not answer this question. (Tr. 375).

In May, 2008, plaintiff's appendix was removed. (Tr. 364-367).

On October 24, 2008, Dr. Andrisse signed a form stating that there was no change in plaintiff's diagnosis or impairments from his prior assessment of January 31, 2008. (Tr. 379).

The transcript contains medical records which post-date the ALJ's decision. See, Tr. 381-466. This evidence was submitted to the Appeals Council, which denied review. This evidence cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. **Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008); Rice v. Barnhart, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).**

### Analysis

Plaintiff's first and third points merit little discussion. She first argues that the ALJ erred in failing to inquire about a possible conflict between the VE's testimony and the *Dictionary of Occupational Titles*. It is true that an ALJ should ask a VE whether there is any conflict between his testimony and the DOT. See, SSR 00-4p. The ALJ did not do so here. However, Ms. Jones did not identify any conflict at the hearing, and does not claim that there was any conflict in her brief. In the absence of a conflict between the testimony and the DOT, the failure to ask the question of the VE was harmless. **Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).** For her last point, she argues that the RFC determination was faulty because the ALJ failed to properly consider her obesity. She is incorrect. The ALJ did, in fact, consider her obesity and concluded that it caused "some limitations in both mobility and stamina." See, Tr. 16. She argues that the ALJ should have found more than "some limitations." She points to statements by the examining doctors that she could not lie flat on the table and that her weight contributed to her back and ankle pain.[3] She does not, however, suggest what additional limitations are established by this evidence. It is clear that the ALJ considered the effect of her obesity, as he was required to do. SSR 02-1p. This Court cannot reweigh the evidence, which is what plaintiff is arguing

---

[3]Plaintiff also relies on a statement by a doctor who saw her a year after the ALJ issued his decision, but that evidence cannot be considered here. *Getch, supra; Rice, supra.*

9

for. See, *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Ms. Jones' second point has merit. She argues that the ALJ erred in weighing the opinion of her treating doctor, Dr. Andrisse. Dr. Andrisse's opinion had three components: that plaintiff could stand/walk for less than a total of one hour out of an eight hour day, that she could sit for a total of less than one hour a day, and that she would have to elevate her leg(s) periodically or throughout the day. (Tr. 375). However the ALJ addressed only the first component. He noted that Dr. Andrisse opined that plaintiff could stand or walk for less than one hour in an eight hour workday, but stated "his office notes do not support such severe limitations." (Tr. 16). The ALJ pointed out that the office note for the visit on the day that Dr. Andrisse filled out the report "did not report any abnormalities to the back and left ankle on physical examination." (Tr. 16-17). Further, the ALJ observed that the office note reflected only Ms. Jones' subjective complaints of back and ankle pain. (Tr. 17).

The ALJ did not say anything at all about the rest of Dr. Andrisse's opinion.

The Commissioner points out that a treating doctor's opinion is entitled to controlling weight only if it is supported by objective medical evidence, citing *Denton v. Astrue*, **596 F.3d 419, 424 (7th Cir. 2010)**. This is a correct statement, but it is not the end of the inquiry.

If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, he must go on to decide what weight the opinion should be given. The ALJ is required to discuss the treating doctor's opinion in light of the "required checklist of factors" set forth in 20 C.F.R. § 404.1527(d). *Campbell v. Astrue*, **627 F.3d 299, 308 (7th Cir. 2010)**; *Jelinek v. Astrue,* **2011 WL 5319852, *5 (7th Cir. 2011).** ALJ Pitts did not do so here.

Further, it was also error for the ALJ to discuss only one component of Dr. Andrisse's opinion. "An ALJ may not selectively consider medical reports, especially those of treating

physicians...." ***Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)**. In view of the VE's testimony that a person who needs to keep her feet elevated at work could not sustain employment, it was especially important that the ALJ discuss Dr. Andrisse's opinion that plaintiff must elevate her legs, applying the regulatory factors.

The ALJ's error in failing to adequately consider Dr. Andrisse's opinion requires remand. It should be clear that the Court is not expressing any opinion about whether Ms. Jones is entitled to benefits or about what the Commissioner's decision should be on remand.

### Conclusion

It is therefore **ORDERED** that the Commissioner's final decision denying Anita Jones' application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to **sentence four** of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:  November 10, 2011.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE**